1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROMEO M.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C24-5656-SKV

ORDER AFFIRMING THE
COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of his application for Supplemental Security Income (SSI). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff was born in November 1999, has a limited education, and has not worked. AR 46. On June 21, 2021, Plaintiff applied for benefits, alleging disability as of May 31, 2017. AR 23. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. AR 23. After the ALJ conducted a hearing on September 27, 2023, the ALJ issued a decision finding Plaintiff not disabled. AR 23.

1

## THE ALJ'S DECISION

2

Utilizing the five-step disability evaluation process,[1] the ALJ found:

3

**Step one**:  Plaintiff has not engaged in substantial gainful activity since May 31, 2017.

4

**Step two**:  Plaintiff has the following severe impairments:  morbid obesity; psychogenic seizures; anxiety; depressive disorder; post-traumatic stress disorder ("PTSD"); and

5

supraventricular tachycardia ("SVT").

6

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

7

**Residual Functional Capacity ("RFC")**:  Plaintiff can perform light work as defined in

8

20 C.F.R. §§ 404.1567(b) and 416.967(b) such that he can lift and carry up to 20 pounds occasionally, can lift and carry up to 10 pounds frequently, can stand and walk with

9

normal breaks for about 6 hours in an 8-hour work day, and can sit with normal breaks for about 6 hours in an 8-hour work day.  He can never climb ladders, ropes, or scaffolds,

10

can occasionally climb ramps and stairs, and can occasionally stoop, kneel, crouch, and crawl.  He must avoid unprotected heights, workplace hazards, and moving machinery,

11

cannot work with vibrations, cannot operate motorized vehicles or equipment, and requires a work environment with no more than moderate noise and no bright lighting.

12

He can perform simple, routine tasks with no production pace work, can have occasional interaction with supervisors and co-workers, and no interaction with the general public,

13

and can tolerate minimal to no changes to a routine work setting.

14

**Step four**:  Plaintiff has no past relevant work.

15

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

16

17

AR 26-46.

18

      The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

19

Commissioner's final decision.  AR 1.  Plaintiff appealed the final decision of the Commissioner

20

to this Court.  Dkt. 4.  The parties consented to proceed before the undersigned Magistrate Judge.

21

Dkt. 2.

22

23

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 2

1

**LEGAL STANDARDS**

2      Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3  security benefits when the ALJ's findings are based on harmful legal error or not supported by

4  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

5  2005).  As a general principle, an ALJ's error may be deemed harmless where it is

6  "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104,

7  1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to

8  determine whether the error alters the outcome of the case." *Id.*

9      Substantial evidence is "more than a mere scintilla.  It means - and means only - such

10 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

11 *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

12 747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving

13 conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v.

14 Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record

15 as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

16 Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

17 susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

18 must be upheld.  *Id.*

19

**DISCUSSION**

20      Plaintiff argues the ALJ erred by misevaluating the medical evidence, Plaintiff's

21 testimony, and the lay witness evidence.  The Commissioner argues the ALJ's decision is free of

22 harmful legal error, supported by substantial evidence, and should be affirmed.

23

1    **A.    The ALJ Did Not Err in Evaluating the Medical Evidence**

2        The ALJ considered the opinions of thirteen medical professionals:  Robert Stuart, M.D.,

3    Dennis Koukol, M.D., Trey Larant, DPT, A. Tsoi, M.D., Myrna Palasi, M.D., Kent Reade,

4    Ph.D., Carole Moore, Ph.D., Katia Ramirez, Psy.D., April DeLira, M.D., Dan Neims, Psy.D.,

5    Melinda C. Losee, Ph.D., Terilee Wingate, Ph.D., and Rebecca Renn, M.D.  The ALJ found the

6    opinion of Dr. Reade to be persuasive and Dr. Tsoi to be slightly persuasive.  AR 40-41.  She

7    found the remaining opinions not persuasive.  The ALJ is responsible for weighing the medical

8    opinions and determining how much weight to give each.  *Cross v. O'Malley*, 89 F.4th 1211,

9    1213-14 (9th Cir. 2024).  Plaintiff challenges the ALJ's evaluation of seven opinions:  Drs.

10   Ramirez, DeLira, Palasi, Losee, Renn, Reade, and physical therapist Larant.

11        *1.    Katia Ramirez, Psy.D. and April DeLira, M.D.*

12        The ALJ considered the opinions of Dr. Ramirez and Dr. DeLira together and discounted

13   both as inconsistent with the overall medical record.  AR 42.  Plaintiff argues that the evidence

14   cited by the ALJ is not inconsistent.  Dkt. 12 at 4-5.  The Commissioner argues the ALJ's

15   decision is supported by substantial evidence.  Dkt. 14 at 4-5.

16        Dr. Ramirez examined Plaintiff in February 2018, and opined that he would need

17   someone to manage his funds, that he was not ready for independent living, that he would have

18   difficulty working with the public or large groups of people, that he was only capable of

19   following short and simple instructions, and that he was not capable of functioning in an intense

20   competitive work environment.  AR 669.  Dr. DeLira examined Plaintiff in June 2018 and

21   opined that he was not able to manage funds independently, that he can perform simple repetitive

22   tasks, and that his ability to perform at a sufficient pace, maintain regular attendance, interact

23   with coworkers, superiors, and the public, and adapt to workplace stresses was poor.  AR 675.

1    The ALJ found these opinions contradicted by Dr. Losee's exam, where the doctor

2    opined that Plaintiff's poor cognitive performance appeared feigned.  AR 839.  Dr. Losee opined

3    that Plaintiff was capable of interacting appropriately with supervisors, coworkers, and the

4    public, which directly contradicts the opinions of Drs. Ramirez and DeLira.  AR 839.  Plaintiff

5    provides no argument to show that this evidence is not in contradiction.  Accordingly, the ALJ

6    did not err in evaluating these opinions.

7                    *2.    Trey Larant, DPT*

8            The ALJ considered the opinion of Plaintiff's physical therapist and discounted it as

9    inconsistent with the medical record and unsupported by Dr. Larant's treating records.  AR 40.

10   Plaintiff argues that Dr. Larant's opinion is consistent with Dr. Martinez's opinion but does not

11   address the supportability finding.  Dkt. 12 at 5.  The Commissioner argues the ALJ's decision is

12   free from legal error.  Dkt. 14 at 5-6.

13           The ALJ cites evidence that Plaintiff has "only occasional nonepileptic seizures" but the

14   records cited do not support this finding.  While the medical record from Plaintiff's August 6,

15   2019, visit does indicate 5/5 strength, it also notes seizure-like events occurring on July 11, July

16   16, July 22, July 23, and July 27.  AR 391.  The record from a November 2017 neurological EEG

17   monitoring contemporaneously notes that Plaintiff experienced seizure-like events twice on July

18   24, once July 26, and July 29th, though all EEG readings were normal.  AR 761.  This is

19   consistent with Plaintiff's diagnosis of pseudo seizures.

20           Nonetheless, as the Commissioner correctly notes, Dr. Larant's opinion amounts to that

21   of a lay witness in this context.  Dkt. 14 at 6.  Dr. Larant opined that Plaintiff was severely

22   limited and unable to meet the demands of sedentary work due to his seizures.  AR 742.  As a

23   Doctor of Physical Therapy, Dr. Larant is not an "acceptable medical source" as defined by the

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 5

1    regulations.  20 C.F.R. § 404.1502 ("Acceptable medical source means a medical source who is

2    a: (1) Licensed physician (medical or osteopathic doctor)").  While a physical therapist may still

3    provide valuable insight into the physical limitations faced by a claimant, Dr. Larant did not have

4    any special understanding of Plaintiff's seizures to conclude that they would leave Plaintiff

5    unable to meet the demands of sedentary work.  Accordingly, the ALJ did not err in concluding

6    that Dr. Larant's opinion was unsupported.

7            3.    *Myrna Palasi, M.D.*

8            Plaintiff argues that the ALJ erred in evaluating the medical opinion of Dr. Palasi because

9    "none of the evidence cited by the ALJ actually contradicts Dr. Palasi's opinion." Dkt. 12 at 6.

10   The ALJ considered Dr. Palasi's opinion and discounted it as unsupported and inconsistent with

11   the medical record.  AR 41.  Dr. Palasi issued non-examining opinions in July 2017, October

12   2017, and July 2019 and opined that Plaintiff had marked limitation of his motor skills, and that

13   he would only be able to perform sedentary activity.  AR 1384.

14           The ALJ found Dr. Palasi's opinion "internally inconsistent."  AR 41.  It was reasonable

15   for the ALJ to conclude that Dr. Palasi's opinion was unsupported given the direct contradiction

16   contained within her opinion.  *Compare* AR 1382 ("condition renders [Plaintiff] unable to safely

17   sustain a 40-hr workweek.  Recommend a less than sedentary RFC."), *with* AR 1382 (responding

18   to the question "[a]re the severity and functional limitations supported by available medical

19   evidence?" Dr. Palasi checked "no."), *and* AR 1384 (opining that Plaintiff can perform the full

20   range of exertional activities required for sedentary work).  The ALJ's unchallenged finding

21   regarding the internal contradiction of Dr. Palasi's opinion constituted a sufficient basis for the

22   ALJ to conclude that Dr. Palasi's opinion was unpersuasive – even if the ALJ's findings

23   regarding the consistency factor were found to be erroneous.  *See Woods v. Kijakazi*, 32 F.4th

785, 792-94, n.4 (consistency and supportability constitute two distinct factors that should be treated separately).  Accordingly, the ALJ did not err in discounting Dr. Palasi's opinion.

### 4.    *Melinda C. Losee, Ph.D.*

Plaintiff argues that the ALJ erred in evaluating the medical opinion of Dr. Losee as it was "reasonably consistent with the overall record."  Dkt. 12 at 6.  Dr. Losee evaluated Plaintiff in December 2019 and opined that he would have "significant difficulty handling normal work pressure" at the time of the evaluation and could not manage his finances "due to lack of experience."  AR 839.  But Dr. Losee could not opine about other limitations due to Plaintiff's apparent malingering during the exam.  AR 839 ("It is likely that [Plaintiff] suffers from mood disturbance and impaired social functioning; but, due to the unreliability of [his] self-report, such diagnoses cannot be made at this time."; "[Plaintiff] exhibited impaired concentration and memory during mental status testing, which did not appear genuine (i.e., feigned)").

The ALJ considered the opinion of Dr. Losee and discounted it as vague, speculative, and somewhat inconsistent with the overall record.  AR 43-44.  Plaintiff argues that this was not a legitimate reason to discount Dr. Losee's opinion.  Dkt. 12 at 6.  In light of Dr. Losee's conclusion that Plaintiff's self-reporting was unreliable, it was reasonable of the ALJ to find that any limitations Dr. Losee opined to were not supported by the exam.  *See* AR 43-44, 839.  Even if the ALJ had erred in discounting Dr. Losee's opinion for this reason, Plaintiff has not presented this Court with an argument why discounting Dr. Losee's opinion that Plaintiff would have difficulty handling normal work pressure was harmful and not incorporated into the RFC. The RFC limits Plaintiff to simple, routine tasks with no production pace work and no interaction with the general public, and minimal to no changes to a routine work setting.  AR 28. Accordingly, the ALJ did not err in discounting Dr. Losee's opinion.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 7

1          5.    *Rebecca Jo Renn, M.D.*

2          The ALJ considered Dr. Renn's opinion and discounted it as unsupported and

3    inconsistent.  AR 44-45.  Dr. Renn had a treating relationship with Plaintiff and issued an

4    opinion in October 2023.  AR 1798.  Dr. Renn opined that Plaintiff was unable to meet

5    competitive standards in his ability to interact appropriately with the general public, travel to

6    unfamiliar places, and use public transportation, "seriously limited" in nine categories of mental

7    abilities and aptitudes needed to do unskilled work, and would have issues with stress tolerance.

8    AR 1796.  Dr. Renn based this opinion on Plaintiff's PTSD, borderline personality disorder,

9    pseudo seizures, and learning disability.  AR 1793.  Dr. Renn noted that Plaintiff's prognosis was

10   fair, with gradual improvement if he continued treatment.  AR 1793.

11         Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Renn because "Dr. Renn

12   had a longitudinal basis for her opinion."  Dkt. 12 at 8.  This argument fails to address the

13   specific inconsistencies between the opinion and Dr. Renn's treating notes that the ALJ

14   highlighted in her opinion.  For example, Dr. Renn opined that Plaintiff was seriously limited in

15   his ability to "deal with stress of semiskilled and skilled work."  AR 1796.  But in March 2023

16   Dr. Renn noted that, despite Plaintiff feeling overwhelmed, he had experienced no pseudo

17   seizures, and that he had been successfully employing strategies from therapy.  AR 1357.

18         The ALJ further held that Dr. Renn's opinion was inconsistent with the overall record,

19   including notes that Plaintiff "was noted as likely feigning severe cognitive limitations."  AR 45

20   (citing AR 779 (noting insight and judgment outside of normal limits due to "patterns of

21   avoidance and disability conviction."); AR 838 ("During mental status testing, [Plaintiff] did not

22   appear to give consistent best efforts, and exhibited obvious signs suggestive of a naive attempt

23   to malinger severe cognitive impairment.  As a consequence, [Plaintiff's] self-report is

considered to be unreliable."); AR 1569 ("He does have diagnosed mental health conditions but also appears to possibly exaggerate his condition for secondary gain, thus the fake behavior on the [mental status exam]."), AR 1571 ("pattern unusual and suggest faking . . . malingering")). Plaintiff does not challenge this finding, and there is no evidence that it was unreasonable of the ALJ to conclude that Dr. Renn's opinion was inconsistent with the overall medical record. Accordingly, the ALJ did not err in discounting Dr. Renn's opinion.

### 6.    *Kent Reade, Ph.D.*

The ALJ considered the opinion of Dr. Reade and found him to be generally persuasive. AR 41.  Plaintiff argues the ALJ harmfully erred in failing to incorporate Dr. Reade's opinion that Plaintiff "was limited to only superficial interactions with supervisors and with a limited number of coworkers."  Dkt. 12 at 10 (emphasis removed).  The Commissioner did not reply to this argument.  Dkt. 14; Dkt. 15 at 4.  Nonetheless Plaintiff has failed to explain how the RFC limiting Plaintiff to "occasional interaction with supervisors and co-workers," AR 28, does not incorporate this opinion.  Plaintiff has failed to show harmful error.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)) (holding that the party challenging an administrative decision bears the burden of proving harmful error).

### 7.    *Other Medical Evidence*

Lastly, Plaintiff's opening brief summarizes various medical records and invites the Court to reinterpret the medical evidence and reject the ALJ's findings.  Dkt. 12 at 9-10.  The Commissioner argues that Plaintiff fails to raise a specific issue about this evidence and that this is insufficient to establish legal error.  Dkt. 14 at 10.  The Court agrees.  Summarizing facts without providing analysis or legal argument is not enough to demonstrate harmful error.  *See*

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 9

1    *Putz v. Kijakazi*, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022) (noting that where Plaintiff,

2    who was represented by the same counsel as counsel in this case, simply "list[ed] numerous

3    clinical findings, unaccompanied by argument, intended to corroborate testimony the ALJ

4    discounted," Plaintiff waived "any argument based on th[o]se findings" because he failed to

5    present an adequate argument).  It is not this Court's job to "manufacture arguments where none

6    is presented."  *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

7        **B.        The ALJ Did Not Err in Evaluating Plaintiff's Testimony**

8            Plaintiff argues that the ALJ erred in discounting his subjective symptom testimony,

9    because "none of the ALJ's reasons for rejecting Martinez's testimony are specific, clear, and

10   convincing."  Dkt. 12 at 13.  The ALJ considered Plaintiff's testimony and discounted it as

11   inconsistent with the medical evidence.  AR 29.  Absent evidence of malingering, an ALJ must

12   provide clear and convincing reasons to discount claimant's testimony.  *See Burrell v. Colvin*,

13   775 F.3d 1133, 1136-37 (9th Cir. 2014).  "Even when an agency explains its decision with less

14   than ideal clarity, we must uphold it if the agency's path may reasonably be discerned."  *Molina*

15   *v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (cleaned up).

16           Plaintiff testified that he has stress seizures, also known as pseudo seizures, which are

17   triggered by various factors including crowds, confrontation, unexpected sounds, and low blood

18   sugar.  AR 64-65.  The pseudo seizures result in difficulty communicating, occasional temporary

19   blindness and deafness, and once resulted in his heart stopping.  AR 65.  After a seizure he is

20   weak and uses a wheelchair to get around.  AR 65.  His supraventricular tachycardia ("SVT")

21   causes an abnormally high heart rate when doing basic activities of daily living, like laundry.

22   AR 65.  In addition to pseudo seizures, he also suffers from epileptic seizures every two to three

23   years.  AR 66.  Doctors first diagnosed Plaintiff with depression around nine-years-old and he

1    has attended mental health counseling most of his life, except when he "was unable to, due to

2    [his] family circumstances." AR 66-67.  His heart medications cause extreme fatigue.  AR 67.

3    He has insomnia and nightmares as a result of PTSD, which causes his sleep patterns to vary

4    widely.  AR 68-69.  Most days he either stays in bed or sits in his recliner until he is hungry, at

5    which point a parent or hired caregiver will make him food.  AR 70-71.

6           In discounting Plaintiff's testimony, the ALJ extensively summarized the medical record,

7    including opinion evidence from Dr. Wingate, Dr. Losee, and Dr. Neims identifying suggestions

8    of malingering, symptom exaggeration, and a "conviction of disability."  AR 30, 32-33, 39.  An

9    ALJ may properly rely on such evidence to discount a claimant's testimony.  *Berry v. Astrue*,

10   622 F.3d 1228, 1235 (9th Cir. 2010); *Thomas*, 278 F.3d at 958; *Tonapetyan v. Halter*, 242 F.3d

11   1144, 1148 (9th Cir. 2001).

12          Over eleven pages, the ALJ also pointed to repeated normal clinical findings and

13   objective medical evidence which contradicted Plaintiff's testimony.  AR 29-40.  For example,

14   though Plaintiff testified that his medications caused fatigue, the record reflects no reported side

15   effects of medications.  AR 36 (citing AR 1345); *see also* AR 1348, 1351, 1355, 1358, 1361.

16   The medical record showed that Plaintiff only had stress seizures if something unusual were to

17   happen, contradicting his testimony.  AR 36 (citing AR 1347).  The ALJ also pointed to evidence

18   that Plaintiff did not seek any treatment for a year.  AR 30.  Failure to seek treatment is a

19   legitimate reason to discount testimony.  *Molina*, 674 F.3d at 1113-14.  While Plaintiff may

20   prefer a different interpretation of the evidence, the ALJ's conclusion is rational and therefore

21   must be upheld.  *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1198 (9th Cir. 2004).

22

23

1    **C.    The ALJ Did Not Err in Evaluating Lay Witness Evidence**

2        Plaintiff argues the ALJ failed to provide the necessary germane reasons for rejecting lay

3    witness evidence.  The Commissioner argues the ALJ was not required to provide such reasons

4    and that, even if required to do so, any error would have been harmless.

5        The Ninth Circuit has not yet resolved whether an ALJ must provide germane reasons for

6    rejecting lay testimony under the regulations applicable to this case.  *See, e.g.*, *Hudnall v. Dudek*,

7    No. 23-3727, 2025 WL 1379101, *2, 3-6 (9th Cir. May 13, 2025) (finding no need to decide

8    issue because any error in failure to provide germane reason for rejecting lay testimony was

9    harmless; containing concurring opinions taking opposing positions as to the new regulations and

10   the germane reason standard); *Crummett v. King*, No. 23-3668, 2025 WL 470890, at *2 (9th Cir.

11   Feb. 12, 2025).  Without that clarification, this Court continues to find no basis for the

12   Commissioner's assertion that an ALJ need not articulate why the ALJ rejected relevant lay

13   witness evidence.  *See, e.g.*, *Mark C. J. v. Comm'r of Soc. Sec.,* C24-5252-DWC, 2024 WL

14   4182576, at *4 (W.D. Wash. Sept. 13, 2024).  *Accord Connelly v. Colvin*, No. 23-35527, 2024

15   WL 5040994, at *2 (9th Cir. Dec. 9, 2024).  *See also Vincent ex rel. Vincent v. Heckler*, 739 F.2d

16   1393, 1395 (9th Cir. 1984) (an ALJ may not reject "significant probative evidence" without

17   explanation).

18       Moreover, regardless of the precise standard, the Court finds that the ALJ's proffered

19   reasons for discounting the non-medical testimony were, at a minimum, germane.  The ALJ

20   considered the testimony of Plaintiff's mother and discounted it as inconsistent with the

21   objective medical evidence, citing her earlier reasoning.  AR 45.  Additionally, the lay testimony

22   was very similar to Plaintiff's own testimony.  Accordingly, the ALJ's reasoning regarding

23   Plaintiff's testimony applies with equal force to the lay testimony.  *See Valentine v. Comm'r of*

1    *Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and

2    convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay

3    witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane

4    reasons for rejecting [the lay witness's] testimony").  The ALJ therefore did not err in rejecting

5    the lay witness testimony.

## CONCLUSION

7      For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and

8    this case is **DISMISSED** with prejudice.

9      Dated this 30th day of July, 2025.

10

11             S. KATE VAUGHAN

12             United States Magistrate Judge